UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIO SARABIA, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

RICOH USA, INC., RICOH LOGISTICS
CORPORATION, and DOES 1-50 ALL
INCLUSIVE,

Defendants.

CASE No. 8:20-cv-00218-JLS-KES

**ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS
SETTLEMENT, AWARD OF
ADMINISTRATION FEES, AND
APPROVAL OF PAGA PAYMENT
AND GRANTING IN PART AWARD
OF CLASS REPRESENTATIVE
PAYMENT AND AWARD OF CLASS
COUNSEL FEES AND COSTS (Doc.
86)**

1

Before the Court is a Motion for Final Approval of Class Settlement, Award of
Class Representative Incentive Payment, Award of Class Counsel Fees and Costs, Award
of Administration Fees, and Approval of PAGA Payment (the "Motion") filed by Plaintiff
Mario Sarabia ("Sarabia").  (Mot., Doc. 86; Mem., Doc. 86-1.)  Having reviewed the
papers and the record in the case and held a final fairness hearing, the Court GRANTS IN
PART Plaintiff's Motion.

## I.     **BACKGROUND**

The Court's Order Granting Plaintiff's Unopposed Motion for Preliminary
Approval of Class Action Settlement ("Prelim. Approval Order") set forth in detail the
background facts in this action, so the Court will not recount those facts extensively here.
(*See* Prelim. Approval Order at 2–4, Doc. 82.)  In sum, this is a wage-and-hour class action
alleging nine causes of action against Defendants Ricoh USA, Inc. and Ricoh Logistics
Corporation: (1) failure to provide or allow meal periods in violation of California Labor
Code sections 226.7(a); (2) failure to pay for missed meal periods in violation of California
Labor Code sections 226.7(a) and 512; (3) failure to pay overtime in violation of
California Labor Code sections 510 and 1194; (4) failure to pay minimum wage for all
wages earned in violation of California Labor Code sections 204, 1194, and 1197; (5)
failure to maintain accurate payroll records and produce the records in violation of
California Labor Code sections 226, 1174, and 1198.5; (6) failure to pay wages upon
separation in violation of California Labor Code sections 201, 202, and 203; (7) failure to
pay for sick days in violation of California Labor Code section 246(a); (8) unlawful and
unfair business acts and practices in violation of California Business & Professions Code
section 17200; and (9) claims pursuant to the California Private Attorneys General Act for
violation of California Labor Code sections 2698, 2699, and 2699.5.  (Third Amended
Complaint ("TAC") ¶¶ 32–73, 116–21.)

Sarabia moved for class certification on September 21, 2021, and the parties filed a Notice of Settlement before the Court disposed of the certification motion on February 18, 2022. (*See* Docs. 64, 65, 70.) Sarabia filed a Motion for Preliminary Approval of Class Action Settlement on April 1, 2022, and the Court granted that motion on October 11, 2022. (*See* Doc. 73; Prelim. Approval Order.)

The terms of the Settlement Agreement are as follows. The Settlement Agreement provides for a non-reversionary gross settlement fund of $1,000,000. (Settlement Agreement § III.A, Doc. 86-3.) The fund will cover attorneys' fees up to 35% of the gross settlement amount; costs, not to exceed $50,000; a Class Representative payment to Sarabia of up to $10,000; a payment for release of Private Attorneys General Act ("PAGA") claims of up to $30,000, of which $22,500 shall be remitted to the Labor and Workforce Development Agency; and settlement administration costs of approximately $8,000. (*Id.* § III.F.) This leaves a "Net Settlement Amount" of approximately $559,500 to be distributed to the approximately 500 putative class members.[1] (Mem. at 5.) The Net Settlement Amount will be distributed to participating class members "on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of workweeks worked by each Class member from December 2, 2015, to February 12, 2022[.]" (*Id.* at 4; Settlement Agreement § III.H.) The amount allocated to the release of the PAGA claims returned to the settlement amount ($7,500) will be distributed pro rata only to Class members employed between April 16, 2021 and February 12, 2022 based on their number of pay periods within those dates. (Mem. at 4–5; Settlement Agreement § III.I.) Class Counsel estimates that the average net payment will be approximately $1,119 per class

---

[1] Due to the lower-than-anticipated litigation costs reimbursement request and the Court's reductions in the attorneys' fees awarded to Class Counsel and class representative enhancement award to Sarabia, the Net Amount and the individual payments to class members will be higher than anticipated in the Settlement Agreement.

member.  (Mem. at 6.)  The Settlement Administrator has offered a slightly higher, more precise estimate of $1,213.26.[2]  (Kline Decl. ¶ 16, Doc. 91.)

In return for the settlement payments, Sarabia and the settlement class members release the following:

> [A]ny and all claims, rights, demands, liabilities obligations, penalties, costs, expenses, attorneys' fees, rights, damages, suits, indemnities, actions and causes of action of every nature and description whatsoever in law, equity or otherwise, whether known or unknown, that each Participating Class member had, now has, or may hereafter claim to have against the Released Parties based upon the alleged failure to provide compliant meal periods and/or pay meal period premiums during the Class Period including, but not limited to, those arising under California Labor Code sections 201, 202, 203, 204, 210, 226, 226.7, 512, 1174, 1194, and 1197, and Business and Professions Code § 17200 *et seq.*

(Settlement Agreement § III.P.)

In its Preliminary Approval Order, the Court: (1) conditionally certified the class for settlement purposes only; (2) preliminarily approved the settlement; (3) named Mario Sarabia as Class Representative; (4) named Stan Mallison, Hector Martinez, Heather Hamilton, and Farrah Mirabel as Class Counsel; (5) approved Simpluris, Inc. ("Simpluris") as the settlement administrator; and (6) approved the form and method of Class Notice. (Prelim Approval Order at 25.)  There, the Court also set a final fairness hearing for March 24, 2023, at 10:30 a.m., and ordered Sarabia and Class Counsel to file a motion for final approval no later than March 3, 2023 and any applications for fees and costs no later than 15 days before the deadline for class members to opt out of the settlement. (*Id.*)

---

[2] Because, as explained in the previous footnote, the Net Settlement Amount will be larger than anticipated, individual payments to class members will be higher than Class Counsel and the settlement administrator have estimated.

After the Court granted preliminary approval of the settlement, counsel for Defendants provided Simpluris with a Class List containing names, most recent mailing address, Social Security numbers and weeks worked during the Class Period for each of 486 class members. (Kline Decl. ¶ 6.) Simpluris mailed the approved Class Notice to the class members on January 26, 2023. (*Id.* ¶ 8.) After 20 Class Notice mailings were returned as undeliverable, Simpluris performed a skip trace search for those addresses, found updated addresses for 17 of the uncontacted class members, and mailed the Class Notice to the new addresses. (*Id.* ¶ 9.) As of March 16, 2023, only three Class Notices remained undeliverable. (*Id.*) Simpluris included a toll-free telephone number for class members to make inquiries about the settlement in the Class Notice, which went live on January 26, 2023, and was accessible 24 hours a day, seven days a week thereafter. (*Id.* ¶ 4.) Simpluris received no requests for exclusion from or objections to the settlement before the opt-out and objection deadline of March 13, 2023. (*Id.* ¶¶ 10–13.)

Counsel for Defendants provided notice of the proposed settlement under 28 U.S.C. § 1715(b) to the appropriate state and federal government officials on January 25, 2023. (Stonhaus Decl. ¶¶ 3–4, Doc. 87.)

Sarabia filed the instant Motion on February 24, 2023. (*See* Mot.) On March 2, 2023, the Court required Class Counsel to file supplemental evidence in support of their requests for attorneys' fees and costs. (*See* Docs. 88, 93.) Class Counsel filed the supplemental evidence on March 7, 2023 and April 7, 2023. (*See* Docs. 89, 90, 94, 95.) On March 16, 2023, the Court continued the final fairness hearing to April 28, 2023, at 10:30 a.m.

## II.    <u>CONDITIONAL CERTIFICATION</u>

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(3) for settlement purposes. (*See* Prelim. Approval Order at 6–13.)

5

Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper settlement class.  The Court therefore incorporates its class certification analysis from the Preliminary Approval Order into the current Order.  (Prelim. Approval Order at 6–13.)

## III.  FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A.  Legal Standard

Before approving a class action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant[3]; and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up and numbering added).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be

---

[3] This factor does not apply in this case.

6

examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (cleaned up).

In addition to these factors, where, as here, "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that the settlement is not "the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cleaned up). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947 (cleaned up). Such signs include (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded" (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.* (cleaned up)

## B.    Discussion

In its Preliminary Approval Order, the Court evaluated each of the factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Prelim. Approval Order at 13–22.) The Court determined that the following factors weighed in favor of approval: (1) the strength of Sarabia's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; and (5) the experience and views of counsel. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties. (*Id.* at 20.) The Court sees no reason to depart from its previous conclusion as to these factors, and therefore incorporates its analysis from the Preliminary Approval Order into the instant Order.

At the time of preliminary approval, the Court did not evaluate class members' reactions to the proposed Settlement Agreement. As described above, notice was sent to all class members pursuant to the Court's Preliminary Approval Order. The deadline for opt-outs and objections has passed and no exclusion requests or objections to the settlement have been received. (Kline Decl. ¶¶ 10–13.) "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Graham v. Cap. One Bank (USA), N.A.*, 2014 WL 12579806, at *4 (C.D. Cal. Dec. 8, 2014) (Staton, J.) (cleaned up); *cf. Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. 2009) (noting that a court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it"). Accordingly, the Court finds that this factor weighs in favor of granting final approval.

Having weighed the *Staton* factors and considered the settlement as a whole, the Court finds the settlement is fair, reasonable, and adequate. Therefore, the Court GRANTS the Motion as to final approval of the class action settlement.

## IV.    PAGA PAYMENT

Pursuant to California Labor Code § 2699(l)(2), Sarabia also seeks final approval of the $30,000 PAGA payment, of which $22,500 (75%) will be distributed to the California Labor and Workforce Development Agency ("LWDA") and the remaining $7,500 (25%) will be distributed pro rata only to class members employed between April 16, 2021 and February 12, 2022 based on their number of pay periods within those dates. (*See* Mem. at 13; Prelim. Approval Order at 4.)

As the Court recognized in its Preliminary Approval Order, the relatively low value of $30,000 for the PAGA payment is reasonable here due to a PAGA settlement previously reached in state court litigation and the lack of evidence to substantiate PAGA claims

during much of the class period.  (Prelim. Approval Order at 18.)  Nothing since the
Preliminary Approval Order suggests that the Court should depart from its preliminary
finding that the fraction of the settlement allocated to the PAGA penalties at issue here is
appropriate.  Moreover, Class Counsel provided the LWDA with a copy of the Settlement
Agreement on April 1, 2022 and the LWDA has offered no objection.  (Mallison Final
Approval Decl. ¶ 26, Doc. 86-2.)

   Accordingly, the Court GRANTS final approval of the $30,000 PAGA payment.

## V.   <u>SETTLEMENT ADMINISTRATION COSTS</u>

   Sarabia asks the Court to approve $8,000 in settlement administration costs to be
paid to Simpluris.  (Mem. at 5.)  The sum is in line with settlement administration costs
previously approved by this Court.  *See, e.g.*, *Sinohui v. CEC Ent., Inc.*, 2018 WL
11379579, at *2, 5 (C.D. Cal. Oct. 2, 2018) (Staton, J.) (approving a $8,000 payment for
the settlement administrator in a case where the gross settlement amount was $275,000).

   Accordingly, the Court finds this amount reasonable and GRANTS the Motion as to
the request for $8,000 in settlement administration costs.

## VI.   <u>ATTORNEYS' FEES</u>

### A.   Legal Standard

   Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized
by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an
independent obligation to ensure that the award, like the settlement itself, is reasonable,
even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941.  In
the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25%

of the recovery obtained.  *See id*. at 942.  Courts must "justify any increase or decrease from this amount based on circumstances in the record."  *Monterrubio v. Best Buy Stores, L.P*., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048–50 (9th Cir. 2002).  Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award."  *Id*. at 1050.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6) Mexican Workers*, 904 F.2d at 1311.

### B.    Discussion

Here, Class Counsel seek fees in the amount of 35% of the gross settlement fund, or $350,000.  Sarabia argues that the requested fee is reasonable under the percentage-of-the-fund approach and in light of Class Counsel's claimed combined lodestar of $680,204.70.  (*See* Mem. at 14–17; First Mallison Fees Decl., Doc. 89; First Maribel Fees Decl., Doc. 90.)  For the following reasons, the Court finds an award above the Ninth Circuit 25% benchmark to be appropriate.  The Court concludes, however, that a 35% award is not sufficiently justified, and that a fee award of 30% of the gross settlement fund, which is $300,000, is more appropriate here.

### i.   Results Achieved

Class Counsel achieved a settlement that represents 25.2% of the class members'
maximum potential recovery.  (*See* Prelim. Approval Order at 18–19.)  Given the obstacles
to maintaining class certification and the obstacles to proving injury to every class member
on certain claims, which the Court addressed in its Preliminary Approval Order, such
recovery represents a superior result.  (*Id.* at 16–19.)  Furthermore, the Court found at the
preliminary approval stage that a settlement totaling 25.2% of the class's maximum
potential recovery was consistent with the range of recovery in other class action
settlements.  (*Id.* at 19.)

The Court finds the results here reflect a reasonable and fair settlement, especially
considering the absence of opt-outs and objections.  Nonetheless, the Court does not find
that the results here are so exceptional as to warrant an upward departure from the Ninth
Circuit's 25% benchmark.  *Cf. Sinohui*, 2018 WL 11379579, at *6 (finding that a
settlement "well above the typical range of similar settlements" and "impressive" results
achieved justified "an upward departure from the 25% benchmark to 30% of the fund").

### ii.   Risk of Litigation

In its Preliminary Approval Order, the Court recognized that that Sarabia faced
obstacles in obtaining class certification and proving that all class members suffered
damages if the case did not settle.  (*Id.* 15–16.)  The Court did not identify any particularly
salient risks in ongoing litigation beyond those common to most wage-and-hour class
actions, however.  Accordingly, the Court finds that this factor does not justify an upward
departure from the standard benchmark.

###        iii.    Skill Required and Quality of Work

Class Counsel are experienced employment class action litigators. (First Mallison Fees Decl. ¶¶ 7–12; First Mirabel Fees Decl. ¶¶ 7–12.) The Court is satisfied that Class Counsel's familiarity with and skills in wage-and-hour allowed them to investigate the class claims at issue here diligently to prepare for mediation and negotiate a superior settlement for the class. Although the motion and the initial proposed notice to class members contained several substantial deficiencies that prompted the Court to request a revised notice and to issue multiple orders for supplemental briefing, the Court concludes that these deficiencies are better addressed in the context of discounting the hours calculation in the lodestar cross-check.

Essentially, the Court is persuaded that Class Counsel leveraged their expertise in wage-and-hour class actions to obtain superior results for the class here, and their work justifies a modest upward departure from the benchmark.

###        iv.    Contingent Nature of the Fee

Class Counsel took this case on a contingent basis and state that they invested over 925.5 hours prosecuting and resolving the case. (*See* Mallison Final Approval Decl. ¶¶ 30–31.) Class Counsel have received no compensation for their efforts during the course of the litigation, and they undertook the representation knowing that they would only be compensated if they achieved an adequate result for the class. (*Id.* ¶ 33.) Nevertheless, "standing alone this factor does not justify an upward departure of the benchmark." *Sinohui*, 2018 WL 11379579, at *6; *see also Clayton v. Knight Transp.*, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging that the contingent nature of the fee "is an important factor," but declining to grant an upward departure where "the risks associated with this case are no greater than that [sic] associated with any other

wage and hour action and no extraordinary circumstances exist that would support an increase from the 25% benchmark"); *accord Navarrete v. Sprint/United Mgmt. Co.,* 2021 WL 9880475, at *7 (C.D. Cal. Nov. 18, 2021) (Staton, J.); *Mortley v. Express Pipe & Supply Co.*, LLC, 2019 WL 13030315, at *6 (C.D. Cal. May 29, 2019) (Staton, J.); *Scott v. HSS Inc.*, 2017 WL 7049524, at *6 (C.D. Cal. Dec. 18, 2017) (Staton, J.).

Although this Court has recognized in other cases that the contingent nature of the fee can support an award above the 25% benchmark, those cases either resulted in higher recovery for the class members or involved more protracted, complex, and time-consuming litigation. *See, e.g.*, *Ruiz v. JCP Logistics, Inc.* ("*Ruiz v. JCP*"), 2016 WL 6156212, at *8 (C.D. Cal. Aug. 12, 2016) (Staton, J.) (finding that even though class counsel had performed typical, garden-variety work for a wage-and-hour class action, the atypically high 36.95% recovery for the class justified an upward departure from the standard benchmark); *Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (finding the contingent nature of the fee justified an award of 32.5% of the settlement amount in a nine-and-a-half-year misclassification case on which class counsel had spent thousands of hours); *Peel v. Brooksamerica Mortg. Corp.*, 2015 WL 12745788, at *7 (C.D. Cal. Apr. 6, 2015) (Staton, J.) (finding that the contingent nature of the fee weighed in favor of an award equivalent to 29.3% of the gross settlement fund was justified in a consumer protection class action that had been litigated for over four years and on which class counsel had spent thousands of hours). That said, other courts in this District have considered the contingency of the fee as weighing slightly in favor of an upward departure from the benchmark in wage-and-hour class actions. *See, e.g.*, *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 2022 WL 17095951, at *5 (C.D. Cal. Jan. 4, 2022); *Luna v. Universal City Studios, LLC*, 2016 WL 10646310, at *7 (C.D. Cal. Sept. 13, 2016).

Last, that Sarabia's retainer agreement with Class Counsel provided that Class Counsel would receive 35% of funds recovered on behalf of the class is inconsequential.

13

(*See* Mem. at 17; Mallison Final Approval Decl. ¶ 30; Retainer Agreement at 2, Doc. 86-5.)  It is well established in the Ninth Circuit that retainer agreements "are not particularly helpful because retainer agreements do not involve, and are not binding, on the class." *Kanawi v. Bechtel Corp.*, 2011 WL 782244, at *2 (N.D. Cal. Mar. 1, 2011) (citing *Vizcaino*, 290 F.3d at 1050); *see also Ruiz v. Towne Air Freight, Inc.*, 2018 WL 5936551, at *1 (C.D. Cal. Mar. 13, 2018) (concluding that a 35% agreed-upon contingency fee did not justify a departure from the 25% benchmark in a wage-and-hour class action because it was "more a reflection of the Class Representatives' relative lack of sophistication and negotiation abilities than anything else").  Sarabia had no power to bind absent class members to the 35% contingency fee in the retainer agreement, and the agreement is not probative of whether other class members would consider the rate reasonable or acceptable.

Accordingly, the Court finds that the contingency factor weighs in favor of only a modest upward departure from the benchmark.

### v.    Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.  While a lodestar cross-check does not require a detailed records review where the Court intends, as it does here, to award fees based on a percentage of the fund, it nonetheless confirms that a 30% benchmark is reasonable despite the claimed lodestar figure of approximately $680,000.

Here, three attorneys, two law clerks, and three paralegals at Mallison and Martinez and solo practitioner Farrah Mirabel have worked on this matter.  Stan Mallison and Farrah Mirabel have submitted declarations setting forth the experience, number of hours billed, rates, and total fees for the attorneys, law clerks, and paralegals who worked on this

matter.  (*See* First Mallison Fees Decl.; First Mirabel Fees Decl.)  Mallison and Martinez's rates are based on the Laffey Matrix.  (First Mallison Fees Decl. ¶¶ 8–10.)  Mirabel justifies her rate based on her "experience and previous requests to state courts[.]"  (First Mirabel Fees Decl. ¶ 10.)  Below is a summary of the hours billed and rates as set forth in the declarations:

| Name | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| H. Hamilton | 168 | $508 | $85,344.00 |
| S. Mallison | 118.5 | $997 | $118,144.50 |
| D. Keller | 9.9 | $413 | $4,088.70 |
| F. Mirabel | 615.65 | $750 | $461,737.50 |
| F. Morgan | 13.7 | $225 | $3,082.50 |
| L. Romero | 4.6 | $225 | $1,035.00 |
| C. Juarez | 12.8 | $225 | $2,880.00 |
| D. Arjona | 14.2 | $225 | $3,195.00 |
| L. Bowie | 3.1 | $225 | $697.50 |
|  |  |  |  |
| **TOTAL** | **960.45** |  | **$680,204.70** |

The Court first addresses whether the hourly rates above are reasonable, then whether the number of hours attorneys and paralegals billed in this matter is appropriate.

### a)   Reasonable Rates

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los*

*Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  The fee applicant bears the burden of
showing that "the requested rates are in line with those prevailing in the community for
similar services by lawyers of reasonably comparable skill, experience and reputation."
*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (cleaned up).
"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the
community, and rate determinations in other cases, particularly those setting a rate for the
plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United
Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts
may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647
F.3d 925, 928 (9th Cir. 2011).  As a general rule, the forum district represents the relevant
legal community.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

        The Court addresses the Mallison and Martinez rates first, then Mirabel's rate.  As
an initial matter, the Court notes that the Laffey Matrix, which reflects market rates for
attorneys' fees incurred in complex litigation in Washington, D.C., is of limited relevance
in determining reasonable attorneys' fees here.  As this Court has observed before, "[t]he
Ninth Circuit has questioned the relevance of the *Laffey* matrix to determining a reasonable
rate in [districts in California]."  *Ruiz v. JCP*, 2016 WL 6156212, at *9 (quoting
*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 263 (N.D. Cal. 2015) (citing *Prison
Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010))).  Further, while
district courts in California have on occasion used the Laffey Matrix to set hourly rates,
they have declined to do so for small firms, which tend to recover fees at lower rates.  *Ruiz
v. JCP*, 2016 WL 6156212, at *9 (quoting *Bellinghausen*, 306 F.R.D. at 263); *see also
Perez v. DirecTV Grp. Holdings, LLC*, 2023 WL 1931376, at *8 (C.D. Cal. Jan. 23, 2023)
(Staton, J.) (concluding, in a more complex and protracted class action, that class counsel's
hourly rates, which were generally lower than Laffey Matrix rates and supported by
evidence of prior awards, were reasonable).

Last, the cases that Mallison has identified where other trial courts awarded

Mallison and Martinez their requested attorneys' fees award as a percentage of the

common fund do not show that the courts in those cases concluded that the Mallison and

Martinez's Laffey Matrix hourly rates were reasonable.  (*See* Second Mallison Fees Decl.

¶ 5, Doc. 95.)  For example, in *Sandoval Ortega v. Aho Enterprises, Inc.*, 2021 WL

5584761 (N.D. Cal. Nov. 30, 2021), the district court noted at the preliminary approval

stage that "Class Counsel explains that the current lodestar is $512,317.70" and "the

requested fee award of $366,667 amounts to a fractional multiplier of .72."  *Id.* at *9.  On

final approval, the district court approved an award of 33.3% of the common fund without

finding that the lodestar amount was based on reasonable hourly rates.  *See Sandoval*

*Ortega v. Aho Enters., Inc.*, No. 4:19-CV-00404 (N.D. Cal. Mar. 28, 2022).  Because the

district court in that case did not examine whether the lodestar amount Mallison and

Martinez put before it was based on reasonable hourly rates, the case does not show that

other courts have found those Laffey Matrix rates reasonable for Mallison and Martinez

attorneys.

For the foregoing reasons, the Court finds that neither the Laffey Matrix nor the

declarations filed by Mallison in support of the fees request justify the hourly rates claimed

by Mallison and Martinez attorneys and that reductions to Mallison and Martinez's hourly

rates are necessary to calculate the true lodestar value in this case.

To determine reasonable hourly rates for partners, associates, and paralegals,

numerous courts in this District and elsewhere have turned to the annual Real Rate Report

as a helpful guide.  *See, e.g.*, *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, 2021 WL

4786889, at *3 (C.D. Cal. Aug. 24, 2021) (turning to the 2020 Real Rate Report "as a

useful guidepost to assess the reasonableness of [claimed] hourly rates in the Central

District of California"); *see also Eksouzian v. Albanese*, 2015 WL 12765585, at *3 (C.D.

Cal. Oct. 23, 2015) (rejecting use of the Laffey Matrix, finding the "Real Rate Report to be

a much better barometer of the reasonable rates in the Central District[,]" and collecting

numerous district court cases relying on the Real Rate Report to determine reasonable attorneys' fees). "The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies." *Rolex Watch USA*, 2021 WL 4786889, at *3 (citing *Hicks v. Toys 'R' US-Del., Inc.*, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014)). Courts have consistently found that the Real Rate Report reflects true market rates more accurately than self-reported rates in various practice areas. *See id.*; *Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012). Accordingly, the Court will consider the 2022 Real Rate Report to determine reasonable hourly rates for Class Counsel.

Lawyers who work on wage-and-hour matters such as this case are classified as "Employment and Labor" attorneys in the Real Rate Report. *See* 2022 Real Rate Report at 233. In Los Angeles, the median hourly rate for partners in the "Employment and Labor" practice area for firms of 501 to 1000 lawyers in size is $677, and the 2022 mean rate is $748. *Id.* at 178. The median hourly rate for associates in this practice area in firms of comparable size is $380, and the 2022 mean is $459. *Id.* Considering a wider range of firm sizes, the median hourly rate for partners in the "Employment and Labor" practice area practicing in Los Angeles is $666, and the 2022 mean is $743. *Id.* at 117. For associates, the median hourly rate is $390 and the 2022 mean is $446. *Id.* Considering all litigation areas, the median hourly rate for partners in Los Angeles is $725, and the 2022 mean is $799. *Id.* at 16. For paralegals, the median hourly rate is $225 and the 2022 mean is $247. *Id.* at 9.

As additional data points, the Court notes that it has recently deemed reasonable hourly rates ranging between $750 and $850 for attorneys with experience comparable to Mallison's experience in other class action settlements. *See, e.g.*, *Perez*, 2023 WL 1931376, at *8 (approving $750 hourly rates for partners with 17 and 26 years of

experience); *Correa v. Zillow, Inc.*, 2021 WL 4925394, at *7 (C.D. Cal. June 14, 2021) (Staton, J.) (approving $850 hourly rate for partner with over 20 years of experience in a wage-and-hour class action settlement).  The Court has also deemed reasonable hourly rates ranging between $450 and $550 for senior associates, and found lower rates appropriate for attorneys with less experience.  *See Perez*, 2023 WL 1931376, at *8; *Correa*, 2021 WL 4925394, at *7.  As for paralegal hourly rates, the Court has approved rates as high as $250, depending on the paralegal's experience.  *See, e.g., Correa*, 2021 WL 4925394, at *7; *cf. In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (deeming reasonable rates for litigation support staff ranging from $150 to $240).

Taking the foregoing factors into consideration, the Court finds it appropriate to reduce or approve the Mallison and Martinez rates as follows:

| Name | Hourly Rate |
|------|-------------|
| H. Hamilton | $425 |
| S. Mallison | $850 |
| D. Keller | $390 |
| F. Morgan | $225 |
| L. Romero | $225 |
| C. Juarez | $225 |
| D. Arjona | $225 |
| L. Bowie | $225 |

Regarding Mirabel's claimed hourly rate of $750, the Court finds that it is reasonable for an attorney in the Los Angeles metropolitan area who has been practicing for three decades.  (*See* First Mirabel Fees Decl. ¶ 7.)  Nevertheless, as the Court discusses below, the itemized billing records that Mirabel submitted in support of her fees request

show that Mirabel performed numerous tasks for which a $750 rate would be excessive. Thus, although the Court deems Mirabel's hourly rate reasonable, it will discount the total number of hours that she billed in this case to calculate a reasonable lodestar amount.

### b) Reasonable Hours

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (cleaned up). To satisfy this burden, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

When it considers evidence of the hours worked, "[t]he district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Id.* at 434 (cleaned up). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.* A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1106.

Here, Class Counsel have submitted itemized billing records for the hours that they worked on this matter. (*See* First Mallison Fees Decl. Ex. 1, Doc. 89-1; First Mirabel Fees Decl. Ex. 1, Doc. 90-1.)

Regarding the hours that Mallison and Martinez attorneys spent on this matter, the Court does not find the total number of hours generally troubling—over 300 hours of work on a case of this type is within bounds. Nevertheless, the Mallison and Martinez records do not demonstrate efficient billing in this matter. To begin with, the records contain vague entries and block-billing. For example, on April 1, 2022, Heather Hamilton billed 5.2 hours for "Motion for Preliminary Approval : drafting, further edits, finalizing and

filing motion, comm w SM, comm w cocounsel FM, comm w paralegal DA [sic]." (First
Mallison Fees Decl. Ex. 1 at 19.) Similarly, on February 24, 2023, Hamilton billed 8 hours
for "Motion for Final Approval: draft/edit/finalize all papers, comm w SM, comm w co-
counsel, comm w paralegal DA re filing [sic]." (*Id.* at 23.) On December 1, 2021, Stan
Mallison billed an 8-hour block as "Mediation Brief: edit brief and damage modeling with
expert [sic]." (*Id.* at 27.) On December 2 and 7, 2021, Mallison billed 4-hour and 2-hour
blocks as simply "Mediation Prep." (*Id.* at 27–28.) On September 28, 2022, Mallison
billed a 5-hour block for "Preliminary Approval Papers: revise decls [sic]." (*Id.* at 29.)
Vague entries, block billing, and multiple attorneys billing for overlapping work do not
show efficient billing. *Cf. Hansen Cold Storage Constr. v. Cold Sys., Inc.*, 2022 WL
1199271, at *6 (C.D. Cal. Feb. 11, 2022) ("Block billing is disfavored because it makes 'it
difficult for the court to determine how much time was actually spent on particular
work.'") (quoting *SAS v. Sawabeh Info. Servs. Co.*, 2015 WL 12763541, at *33 (C.D. Cal.
June 22, 2015)).

Because the Court is unable to discern from the Mallison and Martinez records how
much time Hamilton and Mallison spent on certain tasks and whether that work was
reasonably expended, redundant, or otherwise excessive, it concludes that a reduction in
the number of hours is appropriate to calculate the lodestar. The Ninth Circuit has
affirmed district courts' authority to reduce block-billed hours by 10% to 30%. *See Welch
v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Lahiri v. Universal Music
& Video Distribution Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010). Although the Court
has found a substantial number of block-billed entries by Hamilton and Mallison, their
block billing does not warrant a 30% reduction. A 10% across-the-board reduction of
Hamilton's hours and a 15% reduction of Mallison's hours are appropriate. Accordingly,
the Court reduces Hamilton's hours to 151.2 and Mallison's hours to 100.7.

As for Mirabel's billing records, she has also billed in blocks, and she has billed for
tasks that are properly delegated to junior attorneys or paralegals—and some tasks that

should not be billed at all, such as document conversions and formatting.  For example, on
November 20, 2020, Mirabel billed an entire hour for "Documents are produced one by
one pages isntead [sic] of a combined PDF/sent to IT to combine them."  (First Mirabel
Fees Decl. Ex. 1 at 5.)  Mirabel's billing records also include several 1-hour billing entries
labeled "Mail Chambers docs."  (See, e.g., id. at 4 (containing two such entries); *id.* at 7
(same).)  These deficiencies warrant a more significant reduction of Mirabel's hours than
the Court applied to Hamilton's and Mallison's hours.  A 30% reduction of Mirabel's
hours is appropriate in these circumstances.  Accordingly, the Court reduces Mirabel's
hours to 431.

### c)    Adjusted Lodestar

Applying the above reductions in Class Counsel's hourly rates and hours, the Court
finds that the lodestar value in this case as set forth in the table below:

| Name | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| H. Hamilton | 151.2 | $425 | $64,260.00 |
| S. Mallison | 100.7 | $850 | $85,595.00 |
| D. Keller | 9.9 | $390 | $3,861.00 |
| F. Mirabel | 431 | $750 | $323,250.00 |
| F. Morgan | 13.7 | $225 | $3,082.50 |
| L. Romero | 4.6 | $225 | $1,035.00 |
| C. Juarez | 12.8 | $225 | $2,880.00 |
| D. Arjona | 14.2 | $225 | $3,195.00 |
| L. Bowie | 3.1 | $225 | $697.50 |
|  |  |  |  |
| **TOTAL** | **710.4** |  | **$487,856.00** |

The resulting adjusted lodestar figure is $487,856.00.  This Court has previously noted: "the fact that awarding Class Counsel the benchmark percentage-of-fund results in a negative multiplier when the lodestar cross-check is applied is not, without more, a reason to depart from the 25% benchmark."  *Correa*, 2021 WL 4925394, at *7; *accord Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *9 (C.D. Cal. Oct. 12, 2017); *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015).  Here, the Court finds that the adjusted lodestar figure does not warrant a fees award of 35% the gross settlement fund.  Nevertheless, the Court's adjusted lodestar suggests that a modest upward departure from the 25% benchmark would be appropriate to compensate Class Counsel for their efforts in this case.  *Cf. Song v. THC - Orange Cnty., Inc.*, 2019 WL 13030226, at *8 (C.D. Cal. Aug. 2, 2019) (Staton, J.) (finding that a modest upward departure from the benchmark—27% of the common fund—was warranted when that departure still resulted in a negative lodestar multiplier of approximately 0.47).

### vi.    Conclusion as to Attorneys' Fees Award

As the Court's analysis above explains, the *Vizcaino* factors and the lodestar cross-check in this case do not warrant more than a modest departure from the 25% benchmark for attorneys' fees in a class action settlement.  But a modest upward adjustment is appropriate based on Class Counsel's work on behalf of the class and their willingness to litigate the case without compensation for years.  Accordingly, the Court GRANTS IN PART Class Counsel's request for attorneys' fees and awards them 30% of the gross settlement fund: $300,000.

## VII.    LITIGATION COSTS

Sarabia also asks the Court to approve reimbursement from the gross settlement fund for litigation costs and expenses in the amount of $19,854.  (*See* Mem. at 5; Mallison Final Approval Decl. ¶ 34; Costs Report, Doc. 86-7.)  "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010, at *9  (C.D. Cal. Dec. 5, 2019) (Staton, J.) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008)).  Class Counsel have documented filing and service fees, deposition costs, costs incurred procuring interpreter services, expert witness fees, and mediation fees that they have incurred in litigating this matter.  (*See* Mallison Final Approval Decl. ¶ 34; Costs Report.)  The Court finds the various expenses adequately documented and reasonable.

Accordingly, the Court GRANTS the request for $19,854 in litigation costs.

## VIII.    CLASS REPRESENTATIVE ENHANCEMENT AWARD

Sarabia also seeks a class representative enhancement award of $10,000.  (*See* Mem. at 5; Sarabia Decl. ¶¶ 11–12, Doc. 86-9.)  Service awards are "discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)).  "To [further] assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'"  *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at

977).  Courts "must 'evaluate [such] awards individually' to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'"  *Id.* (quoting *Staton*, 327 F.3d at 975, 977).

Sarabia estimates that he spent between 80 and 100 hours on this case.  (Sarabia Decl. ¶ 12.)  Sarabia provided substantial assistance to Class Counsel in this litigation: he aided Class Counsel's investigation of the underlying facts of the case to inform the drafting of the complaint, motion for class certification, and mediation brief; provided key documentary evidence in the case; and participated in strategy and settlement discussions. Sarabia's "actions resulted in a settlement that, if approved, will provide monetary relief to the settlement class."  *Ruiz v. JCP*, 2016 WL 6156212, at *11.  Accordingly, the Court finds that approval of a class representative enhancement award is reasonable and appropriate under the circumstances.

Nonetheless, the Court finds that the amount of Sarabia's requested enhancement award is excessive.  Sarabia does not cite to any case where the named plaintiff received an enhancement award of $10,000 for performing similar services in a wage-and-hour class action.  (*See* Mallison Final Approval Decl. ¶¶ 36–37.)  Here, "the overall recovery on behalf of the class is substantial," but it is not "extraordinary."  *Ruiz v. JCP*, 2016 WL 6156212, at *11 (quoting *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009)).  As this Court has noted previously, at least one court has awarded enhancement payments of $7,500 "when individual claimants receive[d] an average award of at least $4,000 in a wage and hour class action settlement," and at least one court "has determined that a $10,000 enhancement award is 'on the high end of the acceptable range' for a class action settlement that totaled $6.9 million for a class of approximately 2,752 members."  *Id.*  (first citing *Morales v. Stevco, Inc.*, 2012 WL 1790371, at *14, 16–19 (E.D. Cal. May 16, 2012); and then citing *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *4, 5 (N.D. Cal. Feb. 16, 2011)).

In comparison to the cited cases, the size of the class and the recovery per class member here are relatively small: there are only 486 class members and Class Counsel estimate the average net recovery per class member at approximately $1,200. (*See* Kline Decl. ¶ 16.) Further, this Court previously found appropriate an enhancement award of $3,000 for a class representative who had spent more than 150 hours on an employment class action that resulted in a total average recovery per class member of $1,015.55— though the size of the gross settlement fund there, at $275,000, was significantly smaller than here. *See Sinohui*, 2018 WL 11379579, at *6.

Upon weighing the services rendered by Sarabia, the risks undertaken by him in this litigation, and the proportion of the requested award relative to the settlement amount and individual class member payments, the Court finds that an enhancement award of $10,000 is excessive here.

Accordingly, the Court GRANTS IN PART Sarabia's request for an enhancement award and awards him $7,500. *Cf. Perez*, 2023 WL 1931376, at *11 (awarding $7,500 each to five class representatives who had individually spent between 35 and 60 hours on a case that settled for $10,000,000).

IX. **CONCLUSION**

The Court finds the settlement to be fair, adequate, and reasonable. Accordingly, the Court GRANTS the Motion in substantial part as follows:

- The Court GRANTS final approval of the class settlement.
- The Court GRANTS final approval of the PAGA payment.
- The Court GRANTS Sarabia's request for Simpluris to be paid $8,000 in settlement administration costs from the gross settlement fund.
- The Court GRANTS an award of attorneys' fees in the amount of $300,000.
- The Court GRANTS Class Counsel's request to be reimbursed litigation costs from the gross settlement fund in the amount of $19,854.

- The Court GRANTS Sarabia's request for a class representative enhancement award in the amount of $7,500.

Class Counsel are ordered to file a proposed final judgment consistent with the terms of this Order within five (5) days of its issuance

DATED:  May 01, 2023

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE